HEARD NOVEMBER TERM, 1877.

## CHARLES *vs.* JACOBS.

The general rule is, that where a judgment debtor becomes the personal representative of the judgment creditor, the judgment is extinguished and the debt becomes a realized asset in his hands, to be accounted for in the Probate Court. But this rule is subject to many exceptions; and where an executor did not treat the judgment debt against himself as paid, and died leaving it open and some land subject to its lien, and an administrator *de bonis non cum testamento annexo* of the estate assigned the judgment to a third party, it was held that the assignee had the right to enforce the judgment against the estate of the testator.

BEFORE COOKE, J., AT GREENVILLE, JUNE TERM, 1876.

This was a petition by William B. Charles, trustee, against Richard H. Jacobs, administrator with the will annexed of Ed. O. Jacobs, deceased, and also administrator *de bonis non cum testamento annexo* of William Jacobs, deceased, to renew an execution on a judgment by confession for $2,485.57, which William Jacobs in his lifetime held against Ed. O. Jacobs.

The facts on which the appeal was heard are contained in a statement prepared by counsel as follows:

On September 23d, 1859, Edward O. Jacobs confessed judgment to his father, William Jacobs. Subsequently William Jacobs died, leaving a will, in which he nominated Edward O. Jacobs executor, who qualified and shortly after died. R. H. Jacobs, who owns a tract of land bound by the lien of this judgment, took out letters of administration *de bonis non cum testamento annexo* upon the estate of Edward O. Jacobs. R. H. Jacobs then, as administrator *de bonis non cum testamento annexo*, transferred the judgment of Edward O. Jacobs to William B. Charles, the plaintiff, as trustee for Martha Charles, in part payment of a legacy to him as such under the will of William Jacobs, his maternal grandfather, and credited himself with the payment *pro tanto* in his return. Subsequently John Charles was removed as administrator *cum testamento annexo* of Edward O. Jacobs and R. H. Jacobs was appointed *de bonis non.* The present action was brought to renew this judgment. The first appeal was from an order vacating a judgment on account of errors in the calculation ; the second was by the defendant for the rejection of evidence in a trial upon the merits ; and the present one is upon the proposition that this judgment became cash in the hands of Edward O. Jacobs.

*Simpson & Moore, Cothran & Wells,* for appellants.

*Sullivan & Stokes, Earle,* contra.

November , 1877. The opinion of the Court was delivered by

WILLARD, C. J. This is an application for leave to issue execution on a judgment held by the plaintiff, as trustee, as against the defendant, the administrator *de bonis non cum testamento annexo* of the judgment debtor. The defendant claims that the judgment has become extinguished by the fact that while it was in force E. O. Jacobs, the judgment debtor, became the executor of William Jacobs, the judgment creditor, and that, by operation of law, the judgment became paid and satisfied through the union in E. O. Jacobs of the right, as executor, to enforce such judgment and the obligation in such judgment. He, therefore, as the personal representative of E. O. Jacobs, denies the existence of such judgment. On the other hand, it is alleged by the plaintiff that the defendant,

in the character of administrator *cum testamento annexo* of William Jacobs, the judgment creditor, transfered to him as trustee of certain persons, distributees of William Jacobs, such judgment or a distributable portion of said estate, and he claims that what was done by defendant, as representing the estate of William Jacobs, estops him from impairing its force and validity by denying the existence of the judgment as the representative of E. O. Jacobs, the judgment debtor. It appears that J. Charles preceded the defendant as representative of the estate of E. O. Jacobs, and that defendant did not succeed as representative of that estate until long after the judgment had been transferred by him as representing the estate of William Jacobs.

The first question to be considered is, whether the judgment debtor having become the executor of the judgment creditor the judgment thereby became extinguished by operation of law. The true rule to be drawn from the authorities appears to be that where a debtor becomes the executor or administrator of his creditor the debt is presumed to be paid from the time of its maturity, and the executor or administrator is chargeable with the amount as realized assets, and when there is an official bond the sureties are likewise responsible. That parties interested in the administration, such as creditors and distributees, not having assented to such extinguishment are not bound by such rule of presumption, but may elect to treat the debt as unpaid if not actually paid, so as to reach any securities by way of mortgage, pledge or lien taken by the creditor for its payment. So the executor or administrator may prevent the extinguishment of the original debt by treating and dealing with it as an outstanding obligation, as by transferring it to creditors of the estate as assets of the estate but that such right cannot be exercised as against sureties to the obligation of the debtor, who are discharged if their principal, uniting the character of payer and payee, thus deals with their obligation. That if the executor or administrator actually treats the debt as paid, and accounts for it as such, it becomes legally extinguished as to such executor or administrator and those claiming under him, and cannot be revived by any act of the executor or administrator, such as transferring it in payment of debts of the estate; and if payment is accepted by the distributees on such account, they too are precluded from setting up the debt. The authorities from which these conclusions are deduced are the following:

*Griffin* vs. *Bonham,* 9 Rich. Eq., 77 : This was a case between a surviving executor and the representative of a deceased executor. It was alleged that the deceased executor was a debtor of the testator when the executorship was cast upon him, and that he had not paid the debt. There was a demand that the representative of the deceased executor should surrender to the surviving executor the evidence of such indebtedness, as of a valid obligation, and there was also a question of commissions for the amount of such indebtedness that depended on the question whether it was considered as paid. It was held that the debt was paid under the operation of the rule laid down as follows : "Whenever an executor or administrator is indebted to his testator or intestate, the amount for which he is indebted, and then due, will be considered cash in hand at the moment when he assumes upon himself the administration. If the debt is not due at the commencement of the administration, it will be cash on account to the credit of the estate whenever it falls due in course of administration." This is a correct statement of the rule in its application between the parties then before the Court, namely, an executor and the representative of a deceased co-executor. That it is subject to limitations and exceptions, when considered with reference to other parties interested, appears by the cases which will be hereafter referred to. As this statement of the rule takes no notice of any limitations whatever, it must be considered that it was intended to be laid down with strict reference to the case in hand. In that case nothing appears to have been done by the deceased, while executor, to evince an intent to uphold the debt as existing, as such, and accordingly it was presumed paid. This case is clear authority that as against a co-executor the debt is presumed paid by the fact of co-executorship falling on a debtor to the testator. But it is not determined by whom and under what circumstances such presumption may be rebutted, nor could that determination have been made, for no facts raising such a question were before the Court.

*Schnell* vs. *Schroder* (1 Bail., 334,) leaves the question in the same situation in which *Griffin* vs. *Bonham* left it.

*Clowney* vs. *Cathcart,* 2 S. C., 395: In this case the administrator had assigned a mortgage, made by himself to the intestate and held by him as administrator, to a creditor of his intestate, as an asset of the intestate's estate, and it was now sought to foreclose for the benefit of such creditor. It was held that the mortgage was

not extinguished by the fact that the mortgagor and holder of the land became the administrator of the mortgagee, but that the transfer was effectual in vesting the creditor with the mortgage, as a valid security, which could be enforced against the lands in the defendant's hands. The case places the question of extinguishment, as affecting the administrator, upon his intention as to whether the debt should subsist in specie or be considered paid by conversion into realized assets. It is consistent with the idea that unless the intent of the administrator is made apparent it will be presumed, as against him, that he intended that the debt should be deemed paid. Under this view it was not necessary to decide that the creditor, as such, had an independent right to treat the mortgage as an asset.

*Jacobs* vs. *Woodside*, 6 S. C., 490: The action was against the sureties on a note of the debtor who had been made administrator of his creditor.

It was held, as affecting the sureties on the obligation of the debtor, that the note was to be deemed paid by the fact that the administration had been cast upon the principal debtor. It did not appear that the administrator had attempted to uphold the debt as subsisting security, and if he had it may be doubtful whether he could have done so without affecting the contract of the sureties in a manner inconsistent with the nature and obligacy of that contract and tending to discharge their liability.

*Ipswich Manufacturing Company* vs. *Story*, 5 Met., 310: In this case one who had given a bond and mortgage to the deceased became his administrator. The administrator accounted for the amount of the bond as so much cash in hand before the Probate Court and a decree of distribution was made. Subsequently the administrator assigned the bond and mortgage to a third party. It was held that the bond and mortgage were extinguished by the fact of the accounting and decree of distribution, that being the act of the administrator signifying his intention to regard the debt as paid.

Shaw, C. J., holds when a debtor becomes the executor or administrator of his creditor " the debt becomes *prima facie* assets in the hands of the administrator or executor, to be accounted for and adjusted in probate account as assets actually realized." He holds that in such cases a presumption would arise from the fact of taking administration that the administrator intended to regard the debt

as paid, and that such presumption is strengthened by the fact that the administrator actually accounted for such debt as cash. He says: " Perhaps the mere fact that one had accepted letters of administration would not so far be regarded as payment or extinguishment of his debt due to the intestate as to bar an action to be subsequently brought by an administrator *de bonis non.*"

The same Judge says, speaking of the case of an executor or administrator dying or being removed without actual payment or distribution made: " Perhaps in such case, if the executor or administrator was to die or be removed before any decree of distribution or satisfaction of such decree, and it should turn out that he had no means to pay and satisfy the amount due in his administration account, it might be held in equity in favor of the sureties on his administration bond that the mortgage given to secure the same debt should not be deemed to be discharged ; but when the debt has been in fact credited and a decree of distribution made and satisfied, and the sureties in the administration bond exonerated from all responsibility, and no such change of administration, the mortgage debt must be deemed satisfied and discharged as against all persons claiming upon the mortgage under such administratration." This intimates that the doctrine may be extended to afford protection to the sureties on the administrator's bond, which could of course only be accomplished, as is said, through the intervention of equity.

*Stevens* vs. *Gaylord,* 11 Mass., 255 : It was held also in this case, which was a demand made by the administrator of the creditor, appointed in Massachusetts, that the debtor having been appointed administrator of the creditor in Connecticut, where such intestate had assets, and having, in that State, accounted for the amount of the debt as cash in his inventory, the Massachusetts administrator could not enforce the debt, it being considered as extinguished. The administrators in the two States having, in a certain sense, coordinate powers as between them, on the principle of comity, the presumption of payment was applicable, conformably to the principle on which *Griffin* vs. *Bonham* depended.

*Winship* vs. *Bass,* 12 Mass., 198 : This case contains discussions as to the rule under consideration tending to confine the idea of extinguishment within narrow limits, but decided nothing material to the present question.

*Kinery* vs. *Ensign*, 18 Mass., 232: It was held in this case that the mortgage was not extinguished by the fact that the mortgagor had become administrator for the mortgagee and had accounted for the mortgage debt as cash in his administration accounts. The administrator was permitted to set up the mortgage for the purpose of exercising, in behalf of the estate, the power of redeeming from a prior mortgage. This case holds distinctly that the rule holding a debt due from the administrator to the estate as assets is a mere rule of convenience that should not be allowed to work prejudice to those beneficially interested.

Chief Justice Shaw says of this case, in *Ipswich Manufacturing Company* vs. *Story*, that the case just cited was decided distinctly on the ground that although it might be the right of the creditors and the heirs of the mortgagee to require the administrator to account for his own debt secured by mortgage as assets, and to credit it in his administration account, yet that they were not bound to do it.

It is thus seen that all the essential features of the rule stated above have received judicial sanction of the highest respectability. It will be observed that there is some uncertainty in the language of the cases as to whether the original debt of the administrator may be treated as so far existing after the debtor has become the administrator of his creditor and such administration has terminated that an action may be brought upon it by parties interested in the estate for other purposes than upholding a security given for such debt.

This question is of no great importance as it regards the administrator himself, for his estate can be pursued without resorting to such obligation as the foundation of the proceeding, nor can it be made available as against personal securities for the debt as we have seen. But the cases fully support the idea that if any mortgage, lien or collateral security is held for the debt, it may be pursued and made available in behalf of those interested in the estate. What may be the rule where the administrator is jointly indebted with another need not be considered here. The foregoing view is important to the present case. The judgment in favor of the original testator, W. Jacobs, and against E. O. Jacobs, was a security of this class, and whatever lien it possessed was a security for its discharge. E. O. Jacobs, the judgment debtor, becoming the exe-

cutor, as against those beneficially interested, he could only discharge the lien of the judgment by actual payment. In fact, it does not appear that he ever treated the judgment as paid by returning it as cash. The defendant, as administrator of W. Jacobs, transferred the judgment to the plaintiff in trust for the parties entitled to a distributive portion of the estate shortly after the death of E. O. Jacobs. Subsequently the defendant became administrator *de bonis non* of E. O. Jacobs, and in that character seeks to prevent the judgment from being available in the hands of the plaintiff. It is clear that the trustees, standing in the right of distributees who had the right to subject the judgment considered as a security to the uses of the administration, had a right to receive from defendant the judgment as a distributable portion of the estate. The defendant recognized the right and actually transferred the judgment. He cannot now, in the character of administrator of E. O. Jacobs, defeat that right, for that would be to enable the representative of E. O. Jacobs to take advantage of his intestate's wrong. Nor if the defendant is in possession of the land bound by the judgment, as is intimated, but not established to be the fact, can he defeat the rights of the plaintiff. If he held the land at the time he transferred the judgment, his act setting it up by transfer was supported by the fact that, having the land, he had full right to do so. If he purchased the land subsequently, he purchased with notice; and if with the intention of denying the judgment, it must be presumed that his intention was to take advantage of his own wrong. In any case supposable the defendant is destitute of ground for the exercising the right he claims to prevent the execution of the judgment.

The appeal must be dismissed and the order appealed from affirmed.

*McIver*, A. J., and *Haskell*, A. J., concurred.